## THOMAS TALBOT v. THOMAS JONES.

1. In a proceeding under the 17th sec. of the act for the relief of insolvent debtors, the allegation of the creditor was, " hat the def. had disposed of all his property to his near relations, and in particular to one W. J. T , in trus', for the benefit of several of his near relations, by deed," &c. On the trial of the issue made upon this allegation, it is error in the court to instruc the jury, "that if defendant conveyed any of his property to any of his creditors with intent to take the insolvent oath, they must find for the plaintiff." The first branch of the allegation being too general to support an issue, the instruction should have been confined to the particular conveyance charged to have been made to W. J. T.
2. Where there are several allegations. and as many issues, the jury should find on each issue particularly, but it is not a fatal error for them to find *generally* on all the issues.
3. Where a conveyance is made by a person, with an intent to take the benefit of the insolvent act, such conveyance is so far fraudulent *per se*, as to deprive the party of the benefit of the act.
4. The evidence was, that the applicant for relief under the insolvent law had, shortly before his application, conveyed to his brother property worth more than $5,000, to secure the payment of certain enumerated debts, amounting to less than $3,000; and the property was not liable to be sold under two years. Such a state of facts would well justify a jury in finding a verdict against the applicant, not only because it was a fair inference that the deed was made in contemplation of taking the benefit of the act, but because it secured an obvious benefit to the maker; and on either supposition was fraudulent and void.

APPEAL from the circuit court of Warren county.

*Leonard,* for appellant, cited:
1 Chitty's Blackstone, 88, 89; 2 Blackstone's Rep. 1226; 4 Chitty's Blackston , 21; Meux qui tam. v. Howel et al.; 4 East Rep. 1; Estwi k v. Caillaud, 5 Term Rep. 585; Murray v. Riggs. 15 John. Rep. 585; Wilkes & Fountain v. Ferris, 5 Johnson's Reports, 338; Brashear v.

APRIL TERM,
1838.

Talbot v. Jones.

West and others, Peter's U. S. Rep. 608; Small v. Oud-
ley, 2 P. Williams, 427; McMenomy & Townsend v. Fer-
rers, 3 John. Rep. 71; Phœnix v. Assignees of Ingraham, 5
John. Rep. 420; Ludlow v. Hord. 19 John. Rep. 218;
Wilder v. Winne, 6 Cow. Rep. 287; Scott v. McMillin,
1 Lit. Rep. 307; Wilt v. Franklin, 1 Bin. 502; Hood v.
Sibley, 3 Mo. Rep.

*U. Wright*, for appellee, cited:

1 vol. Mo. Laws, 450; 2 J. C. R. 576; 14 J. R. 464;
5 J. C. R. 332. 20 J. R. 442; 4 Dallas, 76; 2 C. R. U. S.
260; 5 Cranch 289; 7 Peter, 608; 1 John. R. 370; 1 vol.
T. Digest, 104; 1 Fonblanque, 275; 3 vol. Monroe, 6; 4
Bibb, 446; 1 vol. Mo. Decisions; 4 J. R.; 2 vol. Mo.
Decis. 301; 12 Johnson.

Opinion by Tompkins, Judge.

This cause arises out of an application, made by Tal-
bot, to the circuit court of Warren county, to be permit-
ted to take the benefit of the act for the relief of insol-
vent debtors, passed the 18th of December, A. D. 1824.

At the May term of the circuit court for Warren
county, for the year 1833, Jones filed allegations in that
court against Talbot, who had applied for leave to take
the benefit of the above mentioned law. A summons
was issued, commanding Talbot to appear at the Septem-
ber term of the said court, then next. He appeared, and
filed answers; and then moved for a continuance as a
matter of right; his motion was overruled, but the cause
was continued for cause shown, and at his cost. Judg-
ment was afterwards given against him. Talbot moved
for a new trial, on the ground that the evidence was in-
sufficient to justify the finding of the jury; and his motion
being overruled, he appeals to this court to reverse the
judgment of the circuit court.

The allegations filed by Jones are:

1. That Talbot hath indirectly sold and conveyed all
his property, with intent thereby to defraud his creditors.

2. That the said Thomas Talbot has disposed of all his
property to his near relations, and in particular to one
William J. Talbot, in trust, for the benefit of several of
his near relations, and others, by a deed, bearing date
the 3d day of April, 1832.

3. That the said Thomas Talbot made the said con-
veyance to the said William J. Talbot, his brother, as
aforesaid, with a view and expectation of receiving some

profit or advantage thereby; and that the said conveyance was made upon an improper consideration, and with a view to defraud some of his just creditors, and in particular the affiant, Jones.

4. That the said Thomas Talbot has delivered all his property to his said brother, William, in trust, as aforesaid, for an improper consideration, and with an intent to take the benefit of an act made and provided for the relief of insolvent debtors.

5. That the said Thomas Talbot has conveyed the property aforesaid, mentioned in the said deed of trust, to his brother upon an improper consideration, and with an intention of giving an undue preference to some of his creditors, and in particular those mentioned in the said deed, before referred to.

All these allegations were denied by Talbot. It appeared in evidence, that on the third day of April, 1832, Talbot had made a deed, whereby he conveyed to his brother, William Talbot, certain property, estimated to be worth more than five thousand dollars, to secure the payment of certain debts enumerated by him in said deed, amounting to less than three thousand dollars. This deed contained a condition, that if within two years from the date thereof, the said Thomas Talbot should not have paid the said sums of money, by the said deed secured to be paid, then the said William Talbot should be at liberty to sell the said property, conveyed to him as aforesaid, to pay the said debts; but, if before the expiration of said term of two years, said debts should be paid by said Thomas Talbot, then the said William Talbot should reconvey to him the property conveyed as aforesaid.

It also appeared in evidence, that the said Thomas Talbot was indebted to the said Jones and to one David M. Hickman; and that on the 7th day of April, 1832, four days after the making of the said deed, he had written to the said Jones and to the said Hickman, informing them, that being disappointed in the collection of money due him, and that expecting they would sue, and thereby cause others to sue, he had made a deed of trust on all the property he held, to secure the payment of such debts as he felt most anxious to pay; assuring them of his earnest desire to pay all his debts, and of his determination to defraud no body. On the 15th day of May, 1832, a summons was served, at the instance of Jones, on Thomas Talbot, commanding him to appear before a justice of the peace, to answer the plaintiff, Jones, on a demand for money due on an instrument of writing. On

the 22d day of the same month, Talbot took the benefit of the act for the relief of insolvent debtors. The schedule filed by him contains an account of debts due him, to the amount of $6,315, most if not all of which, from the face of the paper, one would suppose to be either desperate or very difficult to collect. In this amount is included the supposed value of two negroes, one a fugitive in New Orleans, and the other in Baltimore; his list of debts, over and above those secured to be paid by the above mentioned deed, amounts to more than three thousand dollars. It was also in evidence t at Talbot, the appellant, was employed by his brother, the trustee, to manage the estate of negroes and land, above mentioned, as conveyed in trust for the creditors.

On motion of Jones, these instructions were given:

1. If the jury believe that Talbot conveyed any of his property to any of his relations, with the intent to take the insolvent oath, then they must find for Jones.

2. That if the jury believe the deed was made with the intent to take the insolvent oath, then they must find for Jones.

3. That if the jury believe the property conveyed was worth about $5070, and was conveyed to secure the debts pretended to be due, as mentioned in said deed of trust, the same is a circumstance from which they may infer fraud.

By the 17th section of the act in question, it is provided, that if any creditor, at or before the time appointed for the final hearing of any debtor's application for a discharge under this act, or within two years thereafter, shall allege on oath and in writing to the court that such debtor hath directly or indirectly sold, conveyed, lessened, concealed, or otherwise disposed of, or purchased in trust for himself or any of his family or relations or person or persons, any part of his property of any kind, or any part of his debts, rights or claims, with intent thereby to deceive or defraud his creditors, or any of them, or to secure the same, or to receive or expect any advantage thereby; or that he has passed bonds or other evidences of debt, either without consideration, or on improper consideration; or hath assigned, conveyed or delivered, any of his property, or any debts, rights or credits, to any creditor or security, or to any other person, with intent of taking the benefit of this act, or of giving an undue or improper preference to any creditor or creditors, or to any security, the clerk of the court, before whom such allegations are filed, shall issue a summons, as in

other cases, requiring the said debtor to appear and answer the said allegations; and upon return of such summons duly served, the court, if the debtor do not appear, shall direct an issue or issues to be made up, and tried by a jury in a summary way, without the form of an action, to determine the truth thereof; and if such debtor appear, the court may, at the election of the creditor filing the allegations, require the debtor to answer interrogatories touching the matter alleged against him, on oath or affirmation, or direct an issue or issues to be made up, and tried in a summary way to determine the truth of the same; and, if upon answer to the said interrogatories, or the verdict of the jury, such debtor shall be found guilty of any fraud or deceit, or having given any undue preference, as aforesaid, he shall forever be barred of the benefit of this act.

The latter part of the same section provides, that any creditor may in like manner file allegations in writing against any person to whom the debtor may have intrusted or disposed of his goods, and proceed against him in like manner as against the debtor himself, to avoid the conveyance, &c.; and that the person proceeded against, if found guilty of colluding with the debtor to defraud or deceive the creditors, shall be answerable over to the creditors, and if himself a creditor, shall lose his debt, and be totally excluded from all distribution.

In the argument of the cause at this term, it is not insisted that the circuit court committed any error against Talbot, in refusing him a continuance, for which its judgment ought to be reversed; and although it is the opinion of this court that he was of right entitled to a continuance, without showing any reason therefor, yet as he did obtain a continuance, for reasons shown to the court, and as he sustained no injury by that decision of the circuit court, its judgment will not, on that account, be reversed; for, the judgment of that court being rendered against him, he would have been compelled to pay the costs, even had the court granted him a continuance, without showing cause therefor.

The first point made by the appellant's counsel is, that the first instruction given is erroneous, because:

1. It is not limited to the matter in issue between the parties. The question of fact submitted to the jury, was confined by the pleadings to an inquiry into the intent with which the property mentioned in the deed was conveyed to William Talbot, while the instruction was general, and extended not only to that conveyance, but

APRIL TERM,
1838.

Talbot v. Jones.

to any conveyance by the appellant of any of his property to any of his relations.

2. It directs the jury, if they find the fact therein stated to be true, to find for the plaintiff generally, instead of directing them, in the event supposed, to find for the plaintiff the particular issue made upon that fact.

3. It directs the jury, that if they find the conveyance was made with intent to take the insolvent oath, they must find for the appellee; while both the law and the issue is to take the benefit of the act for the relief of insolvent debtors.

4. It directs the jury, that if they find the conveyance was made with intent to take the insolvent oath, they must find for the plaintiff, regardless of the fact whether or not it was made upon an improper consideration, which forms a component part of the issue.

5. By the express words of the statute, there are but two bars to the obtaining of the benefit of the act for the relief of insolvent debtors: first, fraud; and, secondly, giving an undue preference.

The second point is, that the second instruction is erroneous, because it is obnoxious to all the objections urged against the first instruction, except the first.

The third point is, that the third instruction is erroneous, because the facts therein stated do not of themselves, unconnected with other facts, justify an inference of fraud.

The 17th section of the act for the relief of insolvent debtors, page 450 of the Digest of 1825, directs an issue or issues to be made up, and trial in a summary way, without the form of an action, and determine the truth thereof.

In a proceeding under the 17th sec. of the act for the relief of insolvent debtors, the allegation of the creditor was, "that the def. had disposed of all his property to his near relations, and in particular to one W. J. T. in trust, for the benefit of several of his near relations, by deed," &c. On the trial of the issue made upon this allega-

The first allegation made by Jones, appellee, is very broad, viz: That Talbot hath indirectly sold and conveyed all his property, with intent thereby to defraud a part of his creditors. No issue is made on this allegation. If issue had been joined on this allegation, it would have been broad enough for the first instruction. But it may be well assumed that it is too broad, and might successfully have been opposed in the circuit court on that ground.

The act, in permitting the trial of the issues to be had in a summary way, without respect to form, did not, on that account, intend to subject the defendant to go to trial without a reasonable notice of the charge against which he was to defend himself.

The second allegation is, that Talbot has disposed of

all his property to his near relations, and in particular to one William J. Talbot, in trust, &c., by deed, &c.

The first member of this allegation, viz: "disposed of his property to his near relations," though perhaps much too vague and uncertain, is not broad enough for the first instruction given by the court. It is but reasonable that the defendant in such a case as this should have notice of the particular person to whom he is charged with conveying his property; and the counsel of Jones seem to have been of the same opinion, for they have omitted to notice that Talbot did not deny their first allegation. If it be correct, then, that Talbot ought to have notice of the allegation of the person to whom this conveyance is charged to have been improperly made, it follows, as a necessary consequence, that the circuit court ought to have confined the instruction first given to the particular conveyance made by Thomas to William J. Talbot. But the first instruction is certainly too broad for the first member of the second allegation, on which some slight evidence was given; in this respect, then, it seems to me that this instruction was wrong, and improperly given.

The second objection to the first instruction does not seem so well founded. The object of the legislature seems to have been to make the proceeding under this act as simple and easy as was consistent with certainty. The jury found the issues for Jones. When all the issues are well taken, such a finding will be well enough. It would certainly have been much better, if the jury had found on each issue particularly.

The third objection to the first instruction is more plausible than the second. It would certainly have been much better to ask the court to instruct the jury to find for Jones, if they believed Talbot conveyed any of his property to any of his relations, with the intent to take the benefit of the act for the relief of insolvent debtors. It is not reasonable to suppose that the defendant would take the oath prescribed by the act, without an intent to apply to the court to take the benefit of the act. Yet it is certainly a very careless manner of framing an instruction, which a court is requested to give. Inasmuch as in this case, it is unnecessary to decide this matter, and it may never be necessary in any future case, it will be passed without further notice.

The fourth objection may be passed with the same remarks as were made on the first, except that it may be necessary to observe, that the statute seems to have de-

tion, it is error in the court to instruct the jury, "that if defendant conveyed any of his property to any of his creditors, with intent to take the insolvent oath, they must find for plaintiff." The first branch of the allegation being too general to support an issue, the instruction should have been confined to the particular conveyance charged to have been made to W. J. T.

Where there are several allegations and as many issues, the jury should find on each issue particularly, but it is not a fatal error for them to find generally on all the issues.

Where a conveyance is made by a person, with an intent to take the

APRIL TERM,
1838.

Talbot v. Jones.

benefit of the insolvent act, such conveyance is so far fraudulent *per se,* as to deprive the party of the benefit of the act.

clared that if the conveyance were made with intent to take the benefit of the act for the relief of insolvent debtors, that fact alone, found by a jury, would deprive the defendant of the benefit of this act. It is very true, as is contended by the counsel of Talbot, in his fifth objection to the first instruction, that he must be found guilty of some fraud or deceit, or of having given s me undue preference, before he can be deprived of the benefit of this act; but it seems equally clear from the provisions of the 17th section of the act, that the making of a conveyance of one's property, with intent of taking the benefit of this act, is one of the things which, when found to be done, will deprive the defendant of the benefit of this act, being itself a fraud. The act contemplates an equal division of the insolvent debtor's property among his creditors; and if he, as a preliminary step to taking the benefit of this act, make, by deed or otherwise, a conveyance of his property to a part of his creditors, it is c rtainly an undue preference within the contemplation of this law, and, in the language of the act, must forever deprive him of the benefit thereof. The conveyance to William J. Talbot, for the benefit of the preferred creditors, may in itself be very good; and indeed Jones, by his conduct, seems to have admitted the deed to be good. For, by the provisions of this same 17th section, he might have filed allegations against William J. Talbot, and the persons for whom, by this deed, he is constituted trustee, and if they had been found guilty of any fraud or deceit, or collusion therein, with the debtor, or of concealing or covering any of his property or effects, or of having knowingly obtained an undue preference, or of conc aling or contriving any acknowledgment of such debt, by parol, or in writing, or any knd of security, to give false color t) any claim, they would have been liable to pay to the creditors fi ing the allegations the whole amount due them by such debtor, with costs of suit; and, in like manner, they would l e liable to pay all other creditors, and lose their own debts, and be totally excluded from all distribution.

The second point is, that the second instruction is erroneous, because it is obnoxious to all the objections, except the first, urged against the first instruction.

After what has been said upon the same subject in considering the first point, it appears useless to add any thing on the second point.

The last inquiry is this: Was the testimony sufficient to justify the finding of the jury? This cause has been

The evidence was, that the ap-

argued as if the proper question were, whether the deed from Thos. Talbot to William Talbot be void, and every case cited by the counsel on either side, seems to have been cited to show, that deeds executed under similar circumstances have been decided to be valid or void, as it suited the interest or views of the party citing such cases; whereas the duty of the jury in this case, was simply to find from the evidence whether the defendant in the circuit court ought to be deprived of the benefit of the act for the relief of insolvent debtors. The deed, as above intimated, may be valid, and yet he may have forfeited his right to the benefit of this act. The 17th section of this act has already been set out. If we pass over that part of the section relating to the intention to deceive and defraud, can any person doubt that the appellant expected to receive a profit by the provisions of this deed? By its provisions, the property conveyed could not be sold by the trustee to pay over to the preferred creditors till the expiration of two years. It was earnestly contended, that the jury might reasonably have inferred from the evidence that the appellant expected to receive a profit from being employed to manage the farm, but this argument appears to have but little weight. It was not attempted to be proved that he was not well qualified for the business, or that the wages he received were too high; and, every thing else being equal, he was certainly the most proper person to be employed by the trustee; for, the property belonging to him, subject to the trust, he might fairly be presumed to be more zealous to improve it and render it productive, than any other person would be. But the benefit of withholding this property from sale for two years, secured to him by this deed—a deed, too, the execution of which he has admitted, was certainly sufficient to justify the jury in their finding. The time within which this act was done, before the party applied to take the benefit of the act, is not and ought not to be prescribed by the act of the assembly. From the circumstance that the deed was executed a short time before the application was made to take the benefit of the act, the jury might reasonably presume that it was executed with intent to take the benefit of the act. There were, however, other circumstances from which the presumption might arise. The deed was executed on the 3d day of April, 1832; on the 7th day of the same month, Talbot writes to Jones, and also to Hickman, another creditor, that the deed was to secure the preferred creditors, expecting they would sue him; and

plicant for relief under the insolvent law had, shortly before his application, conveyed to his brother property worth more than $5,000, to secure the payment of certain enumerated debts, amounting to less than $3,000; and the property was not liable to be sold under two years. Such a state of facts would well justify a jury in finding a verdict against the applicant, not only because it was a fair inference that the deed was made in contemplation of taking the benefit of the act, but because it secured an obvious benefit to the maker; and on either supposition was fraudulent and void.

that he had made a trust to secure the payment of such debts as he felt most anxious to pay, protesting he would pay all his debts as soon as he was able. On the 15th day of May, then next, Jones caused a summons in debt to be served on the appellant; and on the 22d day of the same month, he applied to take the benefit of the act for the relief of insolvent debtors. The jury could not but have perceived, that within a very short time before he applied to the circut court to take the benefit of the act, he had secured to himself some advantage by conveying this property, so that it could not be sold in less than two years. In his letters to Jones and Hickman, respectively, he states that he had conveyed his property to secure the debts he felt most anxious to pay, believing that they would sue him. The jury, then, might fairly have presumed that he conveyed this property to William Talbot with intent of taking the benefit of the act. Certainly a debtor, as a general proposition, has a right to prefer any creditor he pleases, but if he wishes to take the benefit of this act, any preference of one creditor over another is an undue preference, and it will be for the jury to find whether, in preferring these creditors, he gave them an undue preference; and in ascertaining whether such preference be undue or improper, they will consider whether he, at the time, contemplated taking the benefit of the act, and securing these creditors at the expense of the rest. The debts secured may be justly due to the several persons, and as no proceeding has been commenced against them, it is a reasonable presumption that nothing improper has been done; but if the maker of the deed wishes to take the benefit of this act, he must be able to satisfy the jury that he did [not] prefer these creditors with the view of leaving the rest of his creditors unprovided for, in case any of them sued him and reduced him to the necessity of taking the benefit of the act. Such a preference, although in the abstrct very proper, would, in my estimation, be both undue and improper, if given with a design to secure these creditors when he should take the benefit of the act for the relief of insolvent debtors, which act requires an equal distribution of all the property among all the creditors. The appellant, then, in my opinion, had no cause to complain that the circuit court refused to grant him a new trial. But as, in my opinion, the circuit court committed error in giving the first instruction, its judgment ought to be reversed; and Judge EDWARDS concurring in this opinion, it is reversed, and the cause remanded to the circuit court, to be proceeded in conformably to this opinion.